## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EXECUTIVE HOME CARE FRANCHISING, LLC, | Case No. |
| Plaintiff, | |
| vs. | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF WITH TEMPORARY RESTRAINTS** |
| SPECIALIZED HOME CARE PROVIDERS, LLC, a corporation, MICHAEL CREATORE, an individual, NICHOLAS KERPSACK, an individual, JOHN DOES 1-5, fictitious parties, | |
| Defendants. | |

Plaintiff Executive Home Care Franchising, LLC ("Executive Care" or "Plaintiff") by and through its attorneys, Marks & Klein, LLP, states by way of Verified Complaint for Declaratory and Injunctive Relief against Defendants Specialized Home Care Providers, LLC, ("Specialized Home Care"), Michael Creatore ("M. Creatore") and Nicholas Kerpsack ("N. Kerpsack") (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1.     This is an action between Plaintiff, a franchisor, and Defendants, its former franchisees, for declaratory relief pursuant to 28 U.S.C. §2201, as well as temporary restraints, preliminary and permanent injunctive relief, seeking to enforce the termination of the Defendants' Youngstown/Mahoning, Akron/Canton, and Cleveland, Ohio Executive Care franchise locations (collectively, the "Franchise Locations"), and further enjoining Defendants from continuing to operate a competing in-home care business in direct violation of the in-term and post-termination obligations under the parties' franchise agreements.

1

2.      Defendants have, *inter alia*, committed multiple material breaches of their franchise agreements including (i) materially breaching various provisions of the Franchise Agreements; (ii) unilaterally terminating the Franchise Agreements with nine (9) years remaining on their contract terms; (iii) refusing to return confidential and proprietary information, and customer lists, to Executive Care; and (iv) operating a competing in-home care business in violation of multiple restrictive covenants contained in the Parties' Franchise Agreements, and have otherwise conspired to injure the goodwill, brand strength and business reputation of Executive Care.

3.      Plaintiff seeks injunctive and equitable relief of termination of the Franchise Agreements based upon (i) Defendants' unilateral abandonment of their Franchise Locations; (ii) Defendants' violation of in-term and post termination restrictive covenants contained in the parties' Franchise Agreements; (iii) continuing trade dress infringement, and unfair competition arising from, among other things, Defendants' failure to comply with the standards of the operations manual, payment obligations in their Franchise Agreements; and, (iv) Defendants' unauthorized use of the Plaintiffs' trademarks, trade names and trade dress in the operation of a competing business.

4.      Specifically, Plaintiff seeks a determination that Defendants should be temporarily restrained and enjoined from the following:

a) continuing to operate an Executive Care franchise location in Youngstown/Mahoning, Akron/Canton and Cleveland, Ohio, or any other restricted area, due to the Defendants' breach of their payment obligations and the in-term and post-termination restrictive covenant contained in the Executive Care Franchise Agreements;

2

b) operating a competing, "independent" home care business in violation of the express provisions of the parties' Franchise Agreements;

c) further violating the fair and reasonable non-disclosure, non-competition and/or non-solicitation clauses in the Franchise Agreements and/or in the separate Non-Disclosure and Non-solicitation clauses in the Franchise Agreements and/or in the separate Non-Disclosure and Non-Compete Agreement executed by Defendants; and

d) enjoining Defendants from improperly failing to return or otherwise using the clients, caregivers, client information, phone numbers, proprietary materials, trademarks, trade names, trade dress of Executive Care and from holding themselves out to the public as, and operating as Executive Care franchisees or any entity in any way affiliated with Executive Care in order to divert business from Executive Care to themselves.

## **PARTIES**

5.     Plaintiff Executive Home Care Franchising, LLC is a New Jersey limited liability company, with a principal place of business located at 270 State Street, Hackensack, New Jersey 07601.

6.     Plaintiff is engaged in the business of selling and granting franchises for the operation of outlets under the trademark EXECUTIVE CARE YOUR HOME CARE COMPANY®, for the purpose of operating an in-home care business (the "System").

7.     Defendant Specialized Home Care Providers, LLC is a corporation doing business in the State of Ohio with a business address located at 775 Boardman Canfield Road, Building J, Unit 5, Youngstown, Ohio 44512.

8.     Defendant Michael Creatore is a resident of the State of Ohio

3

9. Defendant Nicholas Kerpsack is a resident of the State of Ohio

10. John Does 1-5 are all additional parties, yet to be named who, upon information and belief, have and continue to assist Defendants in breaching the in-term and post-termination covenants and restrictions contained in their Franchise Agreements.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction over this matter pursuant to 15 U.S.C. §1221 and 28 U.S.C. §1338(a) and (b) based upon Defendants' alleged violations of the Lanham Trademark Act, 15 U.S.C. §1051, *et seq.*

12. Jurisdiction and venue are proper because Defendants M. Creatore and N. Kerpsack expressly agreed by way of contract to the jurisdiction and venue of the District Court of New Jersey pursuant to Section (§)11.2 (Governing Law, Venue and Jurisdiction) of their Franchise Agreement with Plaintiff. *See* Exhibit A, February 25, 2013 Franchise Agreement, §11.2.2.

13. Furthermore, this Court may also exercise personal jurisdiction over the Defendants based upon Section 11.9 (Injunctive Remedy for Breach) of Defendants M. Creatore and N. Kerpsack's Franchise Agreements, which provides that Plaintiff as franchisor "[h]as the exclusive right to seek relief pursuant to this section in a court of competent jurisdiction as defined in §11.2.2 of this Agreement or any other court of competent jurisdiction." *See* Exh. A., Section 11.9. Plaintiff seeks solely injunctive and equitable relief in this action.

## BACKGROUND FACTS

### A.   The Executive Care Franchise System and Brand

14. Executive Home Care Franchising, LLC is the franchisor of the EXECUTIVE CARE YOUR HOME CARE COMPANY™ franchise system.

4

15.     Executive Care is the owner of the trademark, service mark, and trade name EXECUTIVE CARE YOUR HOME CARE COMPANY™, "Executive Care" and related marks (the "Marks") Registration Numbers 4229224 and 4485670 since 2012 (the "Executive Marks"). Attached hereto as **Exhibit A** is a true and correct copy of Executive Care's United States Patent and trademark Office ("USPTO") Record of Registration of Service Mark.

16.     Plaintiff has the exclusive license to use and license others to use the Marks and the trade name, Executive Care Your Home Care Company and has used the Marks continuously since approximately 2012 to identify Executive Care in-home care businesses.

17.     Plaintiff has obtained its Marks for use in connection with: Franchise services, namely, offering business management assistance in the establishment and operation of home health care businesses; Franchising, namely, offering business management assistance in the establishment and/or operation of home health care businesses. *See* Exhibit A.

18.     The Executive Care trademarks and trade name are distinctive and famous and have acquired secondary meaning.

19.     The Executive Care trademarks and trade name are utilized in interstate commerce.

20.     The Executive Care Marks have been very widely advertised and promoted by Executive Care over the years, specifically with regard to the sale of its services and the granting of rights to operate Executive Care franchised locations.

21.     Executive Care and its franchisees have expended substantial monies in advertising and promoting the Executive Care Marks over the last several years.

22.     Executive Care actively markets franchise opportunities in the Ohio market.

5

23.     Executive Care has spent a considerable amount of time, effort and money to construct and continues to develop, use and control business methods, technical knowledge, marketing concepts, trade secrets, commercial ideas, advertising forms, distinctive signs, trade dress and uniforms, and employee training techniques that, taken together, make up a proprietary system for the operation of in-home care business.

24.     As a result of the extensive sales, advertising, and promotion of the Executive Care Marks, the in-home care industry and the general public in the various markets where Executive Care operates have come to know and recognize the Executive Care Marks, and to associate them exclusively with products and services offered by Executive Care and its franchises. The Executive Care Marks are assets of inestimable value to Executive Care, representing and embodying Executive Care's considerable goodwill and favorable reputation.

## B.     Defendants' Obligations Under the Franchise Agreement and Covenants Not to Compete

25.     On April 5, 2014, Defendants M. Creatore and N. Kerpsack entered into three (3) Franchise Agreements with Plaintiff to operate an Executive Care home care business in Youngstown/Mahoning, Akron/Canton and Cleveland Ohio (collectively, the "Franchise Agreements"). Attached hereto as **Exhibit B** is a true and correct copy of the Franchise Agreements.

26.     Defendants' Youngstown/Mahoning franchise location opened for business in or around June 2014. Notably, Defendants failed to open the remaining two locations.[1]

---

[1] Pursuant to Section 6.4 of the Franchise Agreement, Defendants' obligations to pay continuing monthly royalties, advertising fees, and other fees begins on the earlier of the Start Date of this Agreement…or the day You Executive Care Business begins operation. Therefore, as identified in the Franchise Agreements, Defendants' official State Date for all three (3) territories began April 5, 2014.

6

27.     While the individual defendants signed the Franchise Agreements, Defendants at all relevant times were doing business as "Executive Care."

28.     The Franchise Agreements contain acknowledgments and agreements by Defendants concerning the franchisees' duties under the agreements. For example the applicable paragraphs include, but are not limited to the obligation to promptly pay royalty fees to Plaintiff:

6.2.    Royalties

You shall pay Executive Care a continuing monthly royalty fee equal to five percent (5%) of Gross Revenue for up to the first $2,000,000 in Gross Revenue per Territory, per calendar year, and three (3%) of Gross Revenue for all Gross Revenue for over $2,000,001 per Territory, each calendar year. The minimum royalty due in any calendar month shall be no less than $500 per Territory.

6.9.    Interest on Late Payments

Any payment not received by Executive Care when due will bear interest at ten percent (10%) per year or at the highest rate allowed by applicable law on the date when payment is due, whichever is less[.]

29.     The Franchise Agreements also contain acknowledgments and agreements by Defendants concerning the bases that constitute immediate termination of the franchise agreement.   Specifically included in this provision is termination on the basis of franchisee abandonment:

10.2.1. Immediate Termination upon Notice of Default

        Upon the occurrence of any of the following defaults, Executive Care at its option may terminate this Agreement effective immediately upon written notice to you:

(f)     If You **abandon the Executive Care Business** of if You cease to Operate the Executive Care Business…;

10.2.2. Termination after Five Days' Notice to Cure

        Executive Care, at its option, may terminate this Agreement, effective five (5) days after written notice is given to You, if You fail to

make any payment when due under this Agreement or any other agreement between You and Executive Care, an affiliate of Executive Care, a Related Party of Executive Care, or a designee of Executive Care.

30. The Franchise Agreements also contains acknowledgments and agreements by

Defendants concerning the bases that constitute termination of the franchise agreement after

thirty (30) days' notice.

10.2.3. Termination after Thirty Days' Notice to Cure

Upon the occurrence of any of the following defaults, Executive Care at its option may terminate this Agreement thirty (30) days' notice to cure:

(a) If you fail to submit to Executive Care in a timely manner any information You are required to submit under this Agreement;

\*　　\*　　\*

(e) If You default in the performance of any other obligation under this Agreement or any other agreement with Executive Care or its Related Party.

Under this Section 10.2.3, Executive Care may terminate this Agreement only by giving written notice of termination stating the nature of the default to You at least thirty (30) days prior to the effective date of termination…If any such default is not cured within the specified time, or such longer period as applicable law may require, this Agreement shall terminate without further notice to You effective immediately upon the expiration of the thirty (30) day period or such longer as applicable law may require.

31. The Franchise Agreements further contain acknowledgements and agreements by

Defendants concerning Defendants post-termination or expiration rights and obligations. For

example, the applicable paragraphs include:

10.3. Rights and Obligations After Termination or Expiration

Upon termination of this Agreement for any reason, the parties will have the following rights and obligations:

\*　　\*　　\*

8

(b) You shall…pay Executive Care within thirty (30) days after termination all payments due to Executive Care, and return the Manual and any other property belonging to Executive Care to it, along with a current customer list as of the date of Termination and a current employee list as of the date of Termination.

*     *     *

(i) You may not sell, or in any way divulge, the customer list, employee list, Approved Services, products, approved suppliers, or other confidential and proprietary information of EXECUTIVE CARE YOUR HOME CARE COMPANY™.

32.    In addition to the aforesaid obligations, Defendants M. Creatore and N. Kerpsack, in their capacity as Executive Care franchisees, are each bound by specific in-term and post-termination covenants and obligations. Specifically, Section 8.6 of the Franchise Agreement provides, in pertinent part:

8.6.    Covenant Not to Compete

You may not, **during the term of this Agreement**, operate or own a beneficial interest in any entity that is competitive with any Executive Care business and that is located within a radius of fifty (50) miles of any Executive Care Business' Office.

You may not, for two (2) years after the Termination of this Agreement, operate or own a beneficial interest in any entity that is competitive with any Executive Care Business and that is located within a radius of ten (10) miles of any Executive Care Business' office and/or your Approved Location.

Entities that are competitive with Executive Care include without limitation any business which offers in-home personal care, in-home companionship, in-home meal preparation, medication reminders, medical and personal scheduling, light in-housekeeping, health consulting, in-home skilled care, in-home registered nurses' services, in home health aid service and/or other or products or services similar to those offered by Executive Care Businesses.

9

33.     Moreover, the Franchise Agreements contain a "Nondisclosure and Noncompetition Agreement" attached as Exhibit 4 to the Agreement, which contains acknowledgments and agreements by Defendants concerning Defendants obligation in regard to the nondisclosure of trade secrets and confidential information. For example, the applicable paragraphs include:

Section 3. Return of Proprietary Material

Upon termination of franchise ownership by Executive Care or an Executive Care Your Home Care Company® franchisee. Confidant shall surrender to Executive Care all material considered proprietary by Executive Care…Confidant expressly acknowledges that any such materials of any kind given to him or her are and will remain the sole property of Executive Care.

Section 4. Solicitation of Employees

Confidant further agrees that he or she will not furnish to or for the benefit of any competitor of Executive Care, or the competitor's franchisees, or the competitor's subsidiaries, the name of any person who is employed by Executive Care or by any franchisee of Executive Care.

Section 5. Noncompetition

Confidant agrees and covenants that because of the confidential and sensitive nature of the Confidential Information and because the use of the Confidential information in certain circumstances may cause irrevocable damage to Executive Care. **Confidant will not, until the expiration of two (2) years after the termination of the employment relationship…in any Competitive Business…within a radius of fifty (50) miles of any Executive Care Business' Office or location.**

34.     The Franchise Agreements provide that the failure to comply with a material obligation under the Franchise Agreements constitutes a default under the agreement (§10.2.1).

35.     The Franchise Agreements provide for immediate termination after a written notice (§10.2.1) for certain violations, including franchisee abandonment.

36.     The Franchise Agreements also contain acknowledgments and agreements by Defendants concerning their obligations upon termination of the Agreement. Defendants agreed, among other things, to cease operating as a Executive Care Franchise and to discontinue the use of Executive Care trademarks, trade names and proprietary marks after termination or expiration of the Agreement (§10.3).

**C.     Defendants' Defaults, Abandonment of the Franchise, Unilateral Termination and Breach**

37.     On or about December 31, 2015, Defendants unilaterally terminated and abandoned the Franchise Locations.

38.     On or about January 6, 2015, Defendants were sent a Demand for Compliance Notice (the "January Notice") in regard to Defendants failure to comply with the terms of the Franchise Agreement. Attached hereto as **Exhibit C** is a true and copy of the January Notice.

39.     In the January Notice, Plaintiff outlined several provisions of the Franchise Agreement that Defendants failed to comply with. Specifically, Plaintiff cited:

Section 7.5.1.  Grand Opening

You shall spend at least two thousand dollars ($2,000) on a grand opening advertising program conducted in accordance with the general guidelines for such a program in the Manual, in addition to Your regular monthly Local Advertising pursuant to Section 7.5.2 of this Agreement. Such grand opening must occur within three (3) moths of the opening of Your Executive Care Business.

Section 7.5.2.  Local Advertising

You shall spend a minimum of one thousand dollars ($1,000), or one percent (1%) of Gross Revenue per month, whichever is greater, on local advertising and promotion that conforms to the specifications in the Manual…You shall submit, on or before the tenth $(10^{th})$ day of each month, copies of invoices or receipts to Executive Care for advertising materials or media or both…

40.     According to the January Notice, Defendants violated Section 7.5.1 of the Franchise Agreement by not meeting the three (3) month grand opening expenditure requirement; and Section 7.5.2 of the Franchise Agreement for failing to submit, on or before the tenth (10th) day of each month, copies of invoices or receipts to Executive Care showing compliance with Defendants' local advertising expenditure obligations. Defendants had until February 8, 2015 to cure all of the referenced defaults.

41.     Defendants' abandonment was confirmed on January 8, 2015 when Defendant M. Creatore sent a correspondence to Executive Care advising that the Youngstown/Mahoning, Akron/Canton and Cleveland offices were closed. Attached hereto as **Exhibit D** is a true copy of the January 8, 2015 correspondence.

42.     Further evincing Defendants' intent to abandon the Executive Care franchised Businesses and operate an independent home care business, in direct contravention of their ongoing contractual obligations, is Defendants' website, www.specializedseniorcare.com, registered by Defendant M. Creatore on December 14, 2014; as well as Defendants' State of Ohio Fictitious Name Registration, filed by Defendant M. Creatore on behalf of Specialized Home Care Providers, LLC on January 9, 2015. Attached hereto as **Exhibit E** and **Exhibit F**, respectively, are true copies of the Specialized Senior Care website and Fictitious Name Registration.

43.     In addition, making Defendants abandonment all the more egregious, as early as November 2014, while operating as an Executive Care franchisee, Michael Creatore was in negotiations to purchase "Sateri Home Care;" and, indeed, drafted a Purchase and Sale Agreement, dated January 1, 2015 for Specialized Senior Care, LLC to purchase Sateri Home

12

Companions, a competitive home care business. Attached hereto as **Exhibit G** is a true copy of the Purchase and Sale Agreement.

44.    Approximately nine (9) years remain on the term of the Defendants' Franchise Agreements. *See* Exhibit B.

45.    On January 16, 2015, in a good faith effort to swiftly sever the parties' business relationship and to further remind Defendants of their multiple, ongoing restrictive covenants, Plaintiff presented Defendants with a "Mutual Termination & Release Agreement," which included provisions pertaining to Defendants' in-term and post-termination obligations. Attached hereto as **Exhibit H** is a true copy of the Purchase Agreement.

46.    Defendants rejected the Mutual Termination Agreement.

47.    As such, Defendants have uncontrovertibly and permanently abandoned their Executive Care franchised business for the purpose of operating an independent and competitive in-home care business, in direct contravention of their ongoing contractual obligations.

48.    In addition, Defendants have, to date, failed and refused to pay the royalty fee due and payable that is to Executive Care pursuant to the Franchise Agreement for the month of December 2014, which totals one thousand one hundred forty seven dollars and once cent ($1,147.01), plus estimated royalties through the end of the month totaling an additional ($500), for an aggregate total of two thousand one hundred and forty seven dollars and one cents $1,647.01. Attached hereto as **Exhibit I** is a true and correct copy of the December Royalty Invoice.

49.    Furthermore, Defendants generated several invoices for services in the amount of two thousand eight hundred and thirty nine dollars ($2,839) which was not reported to Executive Care. Attached hereto at **Exhibit J** is a true copy of the unreported invoices.

13

50.     Defendants have, to date, failed to cure their breach of their payment obligations and this total amount remains due and owing to Plaintiff. Defendants' failure constitutes an additional breach of the Franchise Agreements and once again demonstrates Defendants' disavowal of and failure to abide by their most basic contractual obligations to Plaintiff.

51.     Defendants persist in their failure to abide by their post-termination obligations, have failed to return proprietary business information to Plaintiff and continue to operate their competing business.

52.     In addition, Defendants continue to infringe on, and actively use, Plaintiff's trademarks and trade name, in commerce, and outside the scope of the Franchise Agreement. By way of example, Defendants' Facebook®-page currently advertises the Executive Care mark, "*Your Home Care Company.*" Attached hereto as **Exhibit K** is a true copy of Defendants' Facebook®-page.

53.     Pursuant to the applicable provisions in the Franchise Agreements, Defendants agreed not to compete for a **period of two (2) Years within a ten (10) mile radius of their location or any Executive Care Business**, not to solicit executive care employees, to return proprietary information. *See* Verkhoglaz Dec., Exhibit A, Non-Compete, ¶¶ 3, 4, 5, and 7.

54.     Further, Defendants again acknowledged that violations of the Franchise Agreements constitute irreparable harm to Executive Care that is not readily compensable by monetary damages and require injunctive relief.

55.     To date, Defendants, individually and in concert, continue to operate a competing business in direct violation of the Franchise Agreements and Non-Compete Agreement at the Franchise Locations and must be enjoined.

56.     Moreover, Defendants continue to possess and have failed and refused to return proprietary and confidential materials to Executive Care, including but not limited to the Executive Care Operations Manual and related proprietary materials.

57.     Furthermore, Defendants also continue to possess the customer list for all customers previously serviced under their Franchise Agreements. Upon information and belief, and based upon representations and actions made thus far by Defendants, Defendants each intend to divert Executive Customer business directly from their list of customers, to their new independent in-home care business.

## COUNT I
### (Declaratory Judgment – Termination of Franchise Agreement and Injunctive Relief)

58.     The allegations contained paragraphs 1 through 56 are hereby incorporated by reference.

59.     An actual controversy exists between Plaintiff and Defendants and this Court may declare the rights and other legal relations of any party hereto pursuant to 28 U.S.C. § 2201(a).

60.     On April 5, 2014, Plaintiff and Defendants M. Creatore and N. Kerpsack entered into three (3) Franchise Agreements, under which all parties had rights and affirmative obligations.

61.     To date, Plaintiff, the franchisor, has duly performed all of the terms and conditions of the Franchise Agreements.

62.     On December 31, 2014, less than one (1) year after executing their Franchise Agreements and approximately nine (9) years prior to the expiration of the term of the Franchise Agreement, Defendants M. Creatore and N. Kerpsack terminated the Franchise Agreements; and on January 8, 2015 advised Plaintiff that they had closed the Franchise Locations.

15

63.    Such abandonment directly violates Section 10.2.1 of the Franchise Agreements and entitles Plaintiff to terminate the parties' agreements immediately upon written notice.

64.    M. Creatore and N. Kerpsack's operation of a competing in-home care business directly violates Section 8.6 (Covenant Not to Compete) of the Franchise Agreement.

65.    M. Creatore and N. Kerpsack's conduct also violates the express terms of the "Nondisclosure and Noncompetition Agreement" attached as Exhibit 4 to the Franchise Agreements and signed by each of these defendants.

66.    M. Creatore and N. Kerpsack have also failed, to date, to pay royalties due and owing to Plaintiff pursuant to the terms of the parties' franchise agreements, further evincing their failure and refusal to abide by the material terms of the Franchise Agreements.

67.    Once again, on January 8, 2015, Defendants confirmed, in writing, that Defendants had ceased operations as Executive Care franchisees.

68.    On or around January 16, 2015, Plaintiff presented Defendants with a Mutual Termination Agreement but Defendants refused to execute the agreement as written.

69.    To date, Defendants' continue to operate a competitive business in violation of all of the above-stated post-termination obligations.

70.    Plaintiffs are entitled to a judgment, declaring the Franchise Agreements terminating and enjoining Defendants, their employees, agents, servants or persons acting on their behalf from using Executive Care's trade dress, trade secrets and confidential information.

## COUNT II
### (Breach of Contract – Franchise Agreement)

71.    The allegations of paragraphs 1 through 70 are hereby incorporated by reference.

72.    The conduct described herein constitutes multiple breaches of the contractual obligations and agreements contained in the Franchise Agreements including, but not limited to

16

franchisee abandonment violation of Section 10.2.1 and violations of the Covenant Not to Compete contained in Section 8.6 of the Franchise Agreement.

73.     These breaches constitute good cause for immediately terminating the Franchise Agreements.

74.     As a result of Defendants' actions, Executive Care has suffered and continues to suffer irreparable injury.

## COUNT III

### (Trademark Infringement and Violation of Section 32 of the Lanham Act)

75.     The allegations of paragraphs 1 through 74 are hereby incorporated by reference.

76.     Defendants' use of the Executive Care trademarks and trade names, in commerce, outside of the scope of the Franchise Agreements, and without Executive Care's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Executive Care.

77.     Such unauthorized use of Executive Care's trademarks and trade names infringes Executive Care's exclusive rights in their trademarks under applicable state law.

78.     Such unauthorized use of Executive Care's trademarks and trade names further infringes Executive Care's exclusive rights in their trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law.

79.     The acts of Defendants were and are being doing knowingly and intentionally to cause confusion, or to cause mistake, or deceive.

17

80.    As a result of Defendants' actions, Executive Care has suffered and is continuing to suffer irreparable injury, and has incurred and it continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT IV
### (Unfair Competition and Violation of Section 43 of the Lanham Act)

81.    The allegations of paragraphs 1 through 80 are hereby incorporated by reference.

82.    Defendants' use of Executive Care's trade dress in commerce, outside the scope of the Franchise Agreements, and without the consent of Executive Care is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of the Executive Care trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

83.    Defendants' acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake or deceive Ohio consumers, specifically current customers of Plaintiff who believe that they continue to be served by Plaintiff's franchisees.

84.    As a result of Defendants' actions, Executive Care has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT V
### (Trade Dress Infringement)

85.    The allegations of paragraphs 1 through 84 are hereby incorporated by reference.

86.    Executive Care businesses are identified by signs, exterior appearance, certain colors and other items on which the word "Executive Care" appears.

18

87.     Defendants' use of trade dress that is identical to Executive Care's trade dress, outside the scope of the Franchise Agreements, constitutes a false designation of the origin of Defendants' business, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their store with the Executive Care System. Such adoption of Executive Care's trade dress violates the common law.

88.     Defendants' acts were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive and as a result of Defendants' actions, Executive Care has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that had yet to be determined.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray that this Court:

a.     Temporarily restrain and preliminarily and permanently enjoin each of the named Defendants and all those acting in concert with them from:

i.     continuing to operate an Executive Care franchise location in Youngstown/Mahoning, Akron/Canton and Cleveland, Ohio, or anywhere else, due to the Defendants' breach of their payment obligations and the in-term and post-termination restrictive covenant contained in the Executive Care Franchise Agreements;

ii.     operating a competing, "independent" home care business as a Specialized Senior Care, or under any other name for a period of two (2) years within the temporal and geographic restrictions contained in Section 8.6 of the Franchise Agreements in violation of the express provisions of the parties' Franchise Agreements;

iii.     further violating the fair and reasonable non-disclosure, non-competition and/or non-solicitation clauses in the Franchise Agreements and/or in the separate Non-

Disclosure and Non-solicitation clauses in the Franchise Agreements and/or in the separate Non-Disclosure and Non-Compete Agreements executed by Defendants; and

(iv)   enjoining Defendants from improperly failing to return or otherwise using the clients, caregivers, client charts, phone numbers, proprietary materials, trademarks, trade names, trade dress of Executive Care and from holding themselves out to the public as, and operating as Executive Care franchisees or any entity in any way affiliated with Executive Care in order to divert business from Executive Care to themselves.

b.   Any such other relief as this Court may deem just and proper.

## DESIGNATION OF TRIAL COUNSEL

Justin M. Klein, Esq. is hereby designed as trial counsel for Plaintiff.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of six (6) as to any and all issues herein to which they may be entitled to a trial by jury.

MARKS & KLEIN, LLP

/s/ Derek J. Famulari, Esq.
Derek J. Famulari Esq.
63 Riverside Avenue
Red Bank, NJ 07701
Attorneys for Plaintiff

Date: February 24, 2015

20

## VERIFICATION OF LENNY VERKHOGLAZ

I, **Lenny Verkhoglaz**, of full legal age, am the Chief Executive Officer ("CEO") and co-founder of Plaintiff. I hereby verify that I have reviewed all of the allegations contained in the Verified Complaint and verify the truth of same. If any of the foregoing is willfully false I am subject to punishment.

_____
Lenny Verkhoglaz

February 24, 2015

21